**Romesh GULATI, Respondent,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, Appellant.**

**No. C7–84–1333.**

Court of Appeals of Minnesota.

March 12, 1985.

Review Granted May 24, 1985.

tling a Federal Employers' Liability Act (FELA) suit previously brought by him; (2) he was wrongly discharged from Burlington Northern's employ in retaliation for bringing the previous FELA law suit; and (3) intentional infliction of emotional distress. Burlington moved to dismiss for lack of subject matter jurisdiction, contending common law actions were preempted by the Railway Labor Act, 45 U.S.C.A. §§ 151–159a (1972 and Supp.1983), and the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60 (1972). The trial court dismissed the contract claims but not Gulati's claim of intentional infliction of emotional distress, finding that claim fell within the exception to the preemption doctrine enunciated in *Farmer v. United Brotherhood of Carpenters, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977).

## FACTS

Gulati was employed by Burlington Northern as a machinist for 15 years and was a member of the machinists union.

In 1975, Gulati injured his hand during the course of his employment and filed a claim against Burlington under the Federal Employers' Liability Act. Burlington settled March 10, 1980, for $47,250 on an in-service basis which did not affect Gulati's status as an employee.

In the winter of 1979–80, Gulati became subject to constant surveillance while at work, his arrivals and departures being closely monitored by his supervisor. The same surveillance did not extend to his co-employees.

In the summer of 1980, Burlington launched a series of investigations against Gulati. On one occasion, two Burlington officials rifled his private locker. On another occasion Gulati was charged with falsifying a time card but a fellow employee believed the charge was dropped because a foreman forged the card in order to get Gulati fired.

A fellow employee heard Burlington officials say "[w]e will get that S.O.B." and "[h]ave you had any luck getting that S.O.B. 'cause I know you are trying.' "

Michael D. Doshan, Michael L. Weiner, Minneapolis, for respondent.

Michael P. McReynolds, Burlington Northern R. Co., St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Respondent Gulati brought an action against appellant Burlington Northern, his former employer, alleging (1) Burlington Northern had breached an agreement set-

These officials referred to Gulati as "[t]hat stinking Arab," addressing him "[c]ome over here Indian," "[w]here's your camel parked," and "[d]oes your camel have one hump or two?"

His thoroughness in inspecting locomotives for defects prompted a supervisor to vow that he was going to "get Romesh."

The fellow employee testified the harassment made Gulati so tense that he would not dare ride in a car with him, adding "I personally do not know how Romesh Gulati was able to withstand the enormous pressure on him."

Gulati was dismissed in October 1980 for a company rule violation by absenting himself from duty without proper authority in August 1980. The discharge was upheld by the National Railroad Adjustment Board.

In March 1981, Gulati suffered an anterior myocardial infarction.

### ISSUE

Certified Question: Does the Railway Labor Act and/or the Federal Employers' Liability Act preempt state court jurisdiction over plaintiff's claim of intentional infliction of emotional distress?

### ANALYSIS

#### I

Gulati alleges that as a result of the wrongful conduct of Burlington, he suffered emotional distress and deterioration in his physical well-being, including the onset of the infarction. He claims the multiple investigations he was subject to and the charges placed against him constituted retaliation for his suing to recover for injuries to his hand.

Burlington's position is that a common law action for the intentional infliction of emotional distress is preempted by the Railway Labor Act (RLA), 45 U.S.C.A. §§ 151–159a (1972 and Supp.1983), which provides for mandatory arbitration of "minor disputes." Gulati contends that his tort claim falls within the exception created by *Farmer v. United Brotherhood of Carpenters, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977).

*Farmer* brought an action in state court against his union claiming intentional infliction of emotional distress and unlawful discrimination in job referrals. The United States Supreme Court, rejecting a strictly mechanical approach to questions of preemption in the field of labor law relations, held that the state court could exercise jurisdiction over such a claim, even though the campaign of harassment included hiring hall referral discrimination. The Court stated that one must determine the scope of the general preemption rule "by examining the state interests in regulating the conduct in question and the potential for interference with the federal regulatory scheme." *Farmer*, 430 at 297, 97 S.Ct. at 1061. To avoid preemption, the state's interest must be "so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the state of the power to act." *Id.* at 296–97, 97 S.Ct. at 1061–62, (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 243–44, 79 S.Ct. 773, 778–79, 3 L.Ed.2d 775 (1959)).

In applying this test, the Supreme Court in *Farmer* determined that the State of California had a substantial interest in protecting its citizens from intentional infliction of emotional distress. It also determined that neither the National Labor Relations Act nor the collective bargaining agreement protected against the alleged "outrageous" conduct. The court recognized that, because the abusive conduct was intertwined with allegations of hiring hall discrimination, there was some potential that the state claim would touch on areas generally within the exclusive jurisdiction of the National Labor Relations Board. However, the court found this potential interference did not overcome the state's interest because resolution of the state tort suit turned on whether the union's actions had caused the plaintiff's emotional distress, while the focus of an unfair

labor practice inquiry would have been on whether the union's conduct discriminated against the plaintiff in terms of employment opportunities. Thus, "the tort action could be resolved without reference to any accommodation of the special interests of unions and members in the hiring hall context." *Farmer,* 430 at 305, 97 S.Ct. at 1066.

Similarly, in *Sears, Roebuck and Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), the Supreme Court held that Sears could rely on state trespass laws in seeking an injunction against union picketing on its private property.

The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to (as in *Garner*) or different from (as in *Farmer*) that which could have been, but was not, presented to the Labor Board.

*Id.* at 197, 98 S.Ct. at 1757.

In applying *Farmer* to this case, we must examine Minnesota's interest in regulating the conduct in question and the potential for interference with the RLA.

The mandatory arbitration provisions of the Railway Labor Act were designed "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C.A. § 151a(5) (1972). Disputes growing out of grievances or interpretation or application of agreements are called minor disputes. *Majors v. U.S. Air, Inc.,* 525 F.Supp. 853, 855 (D.Md.1981). "The arbitration provisions for minor disputes * * * preempt state remedies." *Id.*

▪ Gulati claims his discharge in October 1980, was in retaliation for his suit against Burlington to recover for injuries to his hand. Normally, an action for wrongful discharge by an employee against a railroad is a minor dispute and subject to the exclusive grievance and arbitration pro-

cedures of the RLA because a collective bargaining agreement is necessarily the source of a claim that a discharge is wrongful. *Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). A claim for intentional infliction of emotional distress based on the process leading to discharge is also a minor dispute within the exclusive province of the grievance mechanisms. *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

▪ A retaliatory discharge is one variety of wrongful discharge. *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045, 1949 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984).

▪ There is no question that Gulati's right not to be discharged at the will of Burlington Northern grows out of the collective bargaining agreement. Consequently, his claim of intentional infliction of emotional distress resulting from the discharge constitutes a minor dispute and falls within the exclusive province of the grievance procedures established by RLA. *See Id.*

▪ However, Gulati also alleges that the unfounded investigations of Burlington, part of an alleged campaign of personal abuse and harassment, constituted retaliation for his suit to recover for injuries to his hand, and as a result, he suffered emotional distress.

▪ Minnesota recognizes the tort of intentional infliction of emotional distress. *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428 (Minn.1983). Four distinct elements of proof are necessary to sustain a claim:

(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.

*Id.* at 438–39. Outrageous conduct is judicially defined as "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.*

at 439 (quoting *Haagenson v. National Farmers Union Property and Casualty Co.*, 277 N.W.2d 648, 652 n. 3 (Minn.1979). Clearly Minnesota's interest in regulating such conduct is strong.

That will not stand by itself. In addition, we must examine the potential for interference with the RLA. First, we note that the RLA itself does not protect against outrageous conduct. *Balzeit v. Southern Pacific Transportation Co.*, 569 F.Supp. 986 (N.D.Calif.1983). Although, as in *Farmer*, there is some potential that Gulati's claim touches on areas generally within the exclusive jurisdiction of the RLA, as, for example, investigations provided by the collective bargaining agreement; we conclude that the potential for interference is minimal. Charges and investigations are governed by the collective bargaining agreement. In this case, charges made by Burlington Northern are part of the pattern of outrageous conduct. However, in an action for intentional infliction of emotional distress, there will be no need to interfere with the jurisdiction of the RLA because the charges did not result in discipline. Rather, the focus of the state inquiry will be whether the unfounded charge against Gulati and investigations that appear in a category not envisioned by the collective bargaining agreement were brought to intimidate him, thereby inflicting emotional distress.

We conclude that Gulati's allegations of outrageous conduct based upon the unfounded charges are separate from the charge which led to his discharge, and, therefore, are not preempted by the RLA.

## II

■ Burlington also contends that Gulati's claim is preempted by the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60 (1972), while at the same time, refusing to concede that an action for an intentional tort could be brought under the act.

The FELA provides that railroads engaged in interstate commerce shall be liable "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees * *." 45 U.S.C.A. § 51.

In *New York Central Railroad Co. v. Winfield*, 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045 (1917), the Supreme Court broadly read "negligence" to include injuries which "arose out of one of the ordinary risks of the work," and, therefore, compensable without the necessity of negligence.

FELA coverage has not been extended to include intentional torts. Moreover, it strictly limits damages to physical injury or death. Therefore, we conclude that it does not preempt a state action.

## DECISION

Certified Question: Does the Railway Labor Act and/or Federal Employers' Liability Act preempt state court jurisdiction over plaintiff's claim of intentional infliction of emotional distress?

We answer the question as follows: The Railway Labor Act preempts state court jurisdiction over plaintiff's claim of intentional infliction of emotional distress resulting from his discharge. It does not preempt the remainder of his claim.

The Federal Employers' Liability Act does not preempt a claim for the intentional infliction of emotional distress.

Certified Question Answered.