R. Richard BASTIAN, III; B.P. Loughridge; Ronald D. Rotunda; Marcia Rotunda; General Synergy Investments, an Oklahoma partnership; Gabriel Fernandez; J. Mahar; CMF Associates, an Illinois partnership; Alfred J. Hendron; and M.T. Davidson, Plaintiffs

v.

PETREN RESOURCES CORPORATION, an Illinois corporation; Faestel Investments, Inc., an Illinois corporation; David J. Faestel; McDermott, Will & Emery, a partnership; and Brian Hucker, Defendants.

No. 86 C 2006.

United States District Court,
N.D. Illinois, E.D.

Oct. 28, 1988.

Michael H. Moirano, Dahl and Moirano, Chicago, Ill., for plaintiffs.

Delilah Brummet, Kirkland & Ellis, Stephen Novack, Donald A. Tarkington, Mitchell L. Marinello, William O'Connor, Zukowski, Rogers & Flood, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On March 7, 1988, this court dismissed the seven-count complaint brought by R. Richard Bastian III and others against Petren Resources Corporation; Faestel Investments, Inc. ("FII"); David J. Faestel; McDermott, Will & Emery; and Brian Hucker. See *Bastian v. Petren Resources Corp.*, 681 F.Supp. 530 (N.D.Ill.1988). All but one of the original counts were dismissed without prejudice. The plaintiffs have corrected some of the defects of their original complaint, added a new count, dropped defendant Hucker, and submitted an Amended Complaint.

In Count 1 of their new complaint, the plaintiffs allege a violation of § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. § 1961 et seq. (1982). In Count 2 the plaintiffs allege that Petren violated § 1962(a) of the RICO statute, while in Counts 3–6 they allege various claims under Illinois law. The defendants have moved for dismissal of Counts 1 and 3–6 of the Amended Complaint under rule 12(b)(6) Fed.R.Civ.P. Additionally, defendant Petren moves for dismissal of Count 2 for plaintiff's failure to comply with Rule 9(b), Fed.R.Civ.P.

The facts alleged in the Amended Complaint are essentially the same as those alleged in the original complaint, which this court canvassed in its earlier opinion. The gravamen of the RICO claim stated in Count 1 is that the defendants drafted an Offering Memorandum that omitted material information. The plaintiffs claim that had the Memorandum contained this information, they would not have invested in limited partnership shares sold through the Memorandum, shares which declined sharply in value. Count 1 concludes: "Plaintiffs have been injured in their business and property by reason of the defendant's [sic] violations of 18 U.S.C. § 1962(c) and (d)." Complaint at ¶ 35.

The defendants contend that the plaintiffs have not alleged causation sufficiently in Count 1 to recover under 18 U.S.C. § 1964(c), the civil damages provision of RICO. Section 1964(c) provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the

suit, including a reasonable attorney's fee.

The defendants draw this court's attention to the words "by reason of." They argue that these words contain requirements of "but for" and "proximate" causation, so familiar from the law of torts. See W. Page Keeton, et al., The Law of Torts §§ 41–42 (5th ed. 1984). The defendants submit that the plaintiffs have not alleged proximate causation.

The proper place to begin any inquiry into what a statute requires (although one would not know it from the briefs submitted in this case) is the language of the statute itself. Section 1964(c)'s phrase "by reason of" does not explicitly require proximate causation. It could very well require only cause in fact, if reduced to its most simple form. The context of the phrase does not cast light on its meaning, and so this court must rely on other means of construing it. One method is to determine if either construction would render § 1964(c) unreasonable, but this method does not help: reading "by reason of" to contain only "but for" causation would be reasonable, given Congress's desire in enacting RICO to fight organized crime aggressively. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 498–99, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985) (reviewing legislative purposes of RICO). On the other hand, it is not inconceivable that Congress would have required proximate causation, given the widespread use of the concept in civil law.

The plain words "by reason of" in § 1964(c), their context, and the reasonableness of the two suggested constructions of the phrase do not exhaust the tools of this court for interpreting the statute. This court has further recourse to the history of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 922, the act that introduced RICO into the federal system. As the Supreme Court noted in Sedima, 473 U.S. at 487–88, 105 S.Ct. at 3280–81, Congress modeled RICO's treble damages provisions on similar civil remedies provided under the federal antitrust laws. While Congress never directed its attention specifically to RICO's "by reason of" language

while considering the Organized Crime Control Act, see Organized Crime Control Act of 1970, H.Rep. No. 91–1549, 91st Cong., 2d Sess. (Sept. 30, 1970) U.S.Code Cong. & Admin.News 1970, p. 4007 (reporting House version of S. 30, which contained RICO's civil damages provision); 116 Cong. Rec. 35191–217 (Oct. 6, 1970) (House debate on Organized Crime Control Act); id. at 35287–364 (Oct. 7, 1970) (conclusion of House debate); id. at 36281–96 (Oct. 12, 1970) (Senate debate), members of both houses repeatedly acknowledged that they were mobilizing "both the criminal and civil mechanisms of the Sherman Act and other antitrust statutes against the barons of organized crime." Id. at 35201 (Rep.Poff). See also id. at 35196, 35197, 35200 (Reps. Celler, McCulloch, and Rodino, to the same effect); id. at 36294, 36296 (Sens. McClellan and Dole, to same effect).

These statements suggest that the antitrust laws are instructive as to the causation required under RICO. While the Court in Sedima noted that there are some indications in the legislative precursors of RICO that the courts should not rely too heavily on the antitrust laws in interpreting § 1964(c), see Sedima, 473 U.S. at 498–99, 105 S.Ct. at 3285–86 (quoting comments of American Bar Association in 1969 on a proposed RICO-like amendment to the Sherman Act, warning that the strict standing and proximate cause requirements of the antitrust laws would hamper efforts to combat organized crime), these historical references should not prevent a court from referring to the antitrust laws altogether. Congress did not ignore the antitrust laws, and neither should this court.

The most direct antitrust analogy to RICO is found in § 4 of the Clayton Act, 15 U.S.C. § 15 (1982). This section contains the exact "by reason of" language found in RICO. The Supreme Court has interpreted this language to impose, for lack of a better term, a "proximate cause" requirement on Clayton Act treble damages claims. See Associated General Contractors v. Carpenters, 459 U.S. 519, 529–37, 103 S.Ct. 897, 903–08, 74 L.Ed.2d 723 (1983). In Carpenters, the Court traced the history of the

common law's influence upon the Clayton Act and concluded that, in enacting the broad remedial provisions of the Clayton Act, " 'Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property.' " *Id.* at 535, 103 S.Ct. at 907, quoting *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 477, 102 S.Ct. 2540, 2547, 73 L.Ed.2d 149 (1982). Congress intended instead to include those limitations of the common law which traditionally have limited the scope of a tortfeasor's liability. While the Court hesitated to employ the words "proximate cause" (or even the seemingly infinite variations of that term, see *Carpenters*, 459 U.S. at 535 n. 32, 103 S.Ct. at 907 n. 32), it was clear in its holding that the Clayton Act required the federal courts to examine, "as was required in common-law damages litigation in 1890, ... the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Id.* at 535, 103 S.Ct. at 907.

Like the Court in *Carpenters*, this court hesitates to use the term "proximate cause" too loosely. Nevertheless, it is appropriate for this court to evaluate the plaintiff's harm, the alleged wrongdoing of the defendants, and the relationship between them in civil RICO actions brought under § 1964(c), as this court would in a case brought under § 4 of the Clayton Act. While the court believes that it is the first court in this circuit to find that § 1964(c) rquires a showing of proximate cause, it should be noted that the Seventh Circuit suggested it in dicta in *Haroco v. American Nat. B. & T. Co. of Chicago*, 747 F.2d 384, 398 (7th Cir.1984):

> This holding by no means renders superfluous the requirement in section 1964(c) that the plaintiff be injured "by reason of" a violation of section 1962. As we read this "by reason of" language, it simply imposes a proximate cause requirement on plaintiffs. The criminal conduct in violation of section 1962 must, directly or indirectly, have injured the

plaintiff's business or property. A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured. This causation requirement might not be subtle, elegant or imaginative, but we believe it is based on a straightforward reading of the statute as Congress intended it to be read.

More recently, the Seventh Circuit has suggested that whenever Congress creates a private right of action for injuries sustained "by reason of" a violation of state or federal law, it obliges a plaintiff to demonstrate a causal connection "roughly equivalent to the causal connection required to establish common law tort liability"—absent an express indication to the contrary. See *Zepik v. Tidewater Midwest, Inc.*, 856 F.2d 936, 942 (7th Cir.1988) (interpreting § 23(a) of Consumer Products Safety Act, codified at 15 U.S.C. § 2072(a)). This court thus believes that it is proper for it to look for "proximate cause" in claims brought under § 1964(c) of RICO.

Proceeding with this in mind, the court finds that the plaintiffs have failed to allege proximate cause in Count 1. The plaintiffs allege that they purchased limited partnerships interests and that those interests are now worthless. The plaintiffs contend further that the defendants violated §§ 1962(c)-(d) by marketing the partnership interests, using an Offering Memorandum that omitted material information in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10-5 (1988), and § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). The Amended Complaint, however, fails to take the any matter further. As the Court noted in *Carpenters*, proper causation requires a relationship between the alleged violation of law and the harm that resulted from the violation. Here, the plaintiffs allege no relationship beyond "but for" causation: had they known the facts omitted from the Offering

Memorandum, they would not have purchased the partnership interests.

Of course, under the Federal Rules of Civil Procedure, plaintiffs need not allege each and every fact relevant to their complaint. Nevertheless, this court cannot find even a suggestion of a relationship between the harms claimed and the securities law violations alleged here sufficient to demonstrate proximate causation. According to the Amended Complaint, the defendants failed to disclose that (1) they faced lawsuits in connection with other ventures that they had promoted; (2) Faestel and FII had defaulted on loans obtained with respect to these other ventures; (3) Petren had been established solely to promote limited partnerships and had no previous operating history; (4) Petren was the alter ego of Faestel and FII; (5) Faestel had "extreme financial difficulties"; (6) Petren had fired its president and chief petroleum engineer for incompetence and recklessness; (7) Faestel and McDermott, Will failed to disclose their knowledge that the limited partnerships had little chance to realize a return on investment; and (8) Faestel and McDermott, Will misrepresented the potential earnings and returns on investment of the 1981A and 1981B Petren limited partnerships. See Amended Complaint at ¶¶ 17, 34.

Amidst all of these allegations, one cannot find the crucial element of a § 1964(c) claim: an allegation that any of these defendants' *omissions* lead to the decline in the value of the plaintiffs' investments. Some of the things that were the subject of the omitted material might have been relevant to the loss: for example, if Petren's allegedly incompetent and reckless president and petroleum engineer sank Petren's capital into dry holes, Petren's limited partners could legitimately connect *that* act with the loss that they suffered. But that is not what the plaintiffs do here. Instead, they claim that by the defendants' silence, Petren lost money. Silence could mean disaster in any number of businesses—broadcasting, for example—but the court fails to understand how it was disastrous in this case.

The plaintiffs contend that this court already resolved the issue of causation in its previous opinion. See *Bastian*, 681 F.Supp. at 537. There this court decided that RICO did not impose a requirement of "loss causation" on § 1964(c) claims, unlike that imposed on claims brought under § 10(b) of the Securities and Exchange Act. The loss causation requirement of § 10(b) is fairly close to the traditional notion of proximate cause. Both concepts involve an examination of the relationship between the alleged violation of the law and the loss claimed to have resulted from the violation. See *id.* at 533–36. This court stands by its earlier decision that RICO does not require loss causation but, as demonstrated above, RICO requires proximate causation. When the RICO violation is built upon a foundation of § 10(b) claims, in most cases the failure to prove loss causation under § 10(b) will result in a failure to prove proximate causation under § 1964(c) of RICO. That is the case here.

This court thus dismisses Count 1 for failure to state a claim. As for Count 2, it names only one defendant, Petren. Petren has not raised the proximate cause argument with respect to Count 2 (it felt content with an objection to the plaintiffs' lack of a particular allegation of fraud), but this court believes that Petren should have raised the argument. Count 2 suffers from the same defect as Count 1, differing only in that Count 2 states that Petren received income from the allegedly illegal securities activity outlined in Count 1 to injure the plaintiffs in their business and property. See Amended Complaint, Count 2 at ¶¶ 29–33. The plaintiffs do not suggest, however, how Petren's receipt of income led to a loss in the value of their interests in Petren. In most businesses, the receipt of income by an entity usually enriches the entity's owners. This court believes that, absent further allegation, Count 2 does not state a sufficiently close causal relationship between Petren's receipt of allegedly illegal income and the plaintiffs' losses.

■ This court thus dismisses Count 2 for failure to state a claim.* As for Counts 3–6, the defendants suggest that this court should exercise its pendent jurisdiction and dismiss these counts for the plaintiffs' failure to state any claim. The defendants acknowledge that this would be an unusual practice for a federal court. Typically, the dismissal of federal claims ends federal jurisdiction over a case, and so it is the usual practice of the federal courts to dismiss any pendent state claims for lack of jurisdiction once the federal claims are gone. A court will retain jurisdiction over state claims only in exceptional circumstances, such as those in *Graf v. Elgin, Joliet and Eastern Ry. Co.*, 790 F.2d 1341 (7th Cir.1986). In *Graf*, the Seventh Circuit reviewed the decision of a federal district court to dismiss a single-count complaint on the merits, even though it ultimately appeared that the count arose under Illinois law. The Seventh Circuit upheld the district court's decision, partly for reasons of judicial economy. The court noted that a federal court should retain jurisdiction over state claims after dismissal of all federal claims in cases "where substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Id.* at 1347–48.

This case does not present the same situation as *Graf*, or even a close analogy. In *Graf*, the district court had ruled on the original two-count complaint filed in the case, saw its decision reviewed and reversed in part by the Seventh Circuit, and had received the single remaining count on remand. Further, that count contained mixed questions of state and federal law, so that it was not clear at first blush that it arose entirely under Illinois law. The questions of Illinois law were also similar to those that would have been reached if federal law applied, mostly questions of fair labor practices.

None of the elements that persuaded the *Graf* court to retain jurisdiction is present here. First, unlike *Graf*, this case has not proceeded beyond the pleadings. Neither party has presented motions for summary judgment, motions that typically involve a greater commitment of judicial resources than those expended on motions to dismiss. Neither party has appealed any of this court's decisions in this case, and so this court does not have the benefit of a higher federal court's familiarity with the facts of this case. Second, Counts 3–6 clearly arise under Illinois law. They are labelled as such, and no questions of federal law emerge from them. The defendants' objections to them rest entirely on points of Illinois law. Last, the objections raised to Counts 3–6 have very little to do with the issue canvassed in this opinion, proximate causation. Hence, while having this court resolve the defendants' objections to Counts 3–6 would save the defendants time and money—particularly if the plaintiffs later choose to file their complaint in the Illinois courts—the focus of the *Graf* decision is savings to the judiciary. It probably would take a state court less time to resolve the state law questions raised by the defendants with respect to Counts 3–6, and so this court will decline the opportunity to do the state court's work.

Therefore, this court dismisses Counts 1 and 2 for failure to state a claim. This court also dismisses Counts 3–6 for lack of jurisdiction.

---

* In *Doe on Behalf of Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 414–16 (7th Cir.1986), the Seventh Circuit noted that *sua sponte* dismissals for failure to state a claim upon which relief can be granted are permitted "so long as a sufficient basis for the court's action is apparent from the plaintiff's pleading." Such dismissals are a proper means of shaping litigation, and are disfavored only when the court fails to give the parties notice or an opportunity to be heard. In this case, the plaintiffs had notice and a sufficient opportunity to be heard on the issue underlying this court's dismissal of Count 2, the plaintiffs' failure to allege proximate cause. It is the same question that the defendants raised as to Count 1.