**Thomas BERNSTEIN,**
**Plaintiff-Appellant,**

**v.**

**LIND–WALDOCK & COMPANY and**
**Chicago Mercantile Exchange,**
**Defendants-Appellees.**

**No. 83–2420.**

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1984.

Decided June 18, 1984.

Kenneth H. Denberg, Siegel, Denberg, Vanasco, Shukovsky, Moses & Schoenstadt, Chicago, Ill., for plaintiff-appellant.

Jeffrey J. Keck, Marcus, Esses, Ham & Assoc., Daniel A. Clune, Freeman, Rothe, Freeman & Salzman, Chicago, Ill., for defendants-appellees.

Before PELL, BAUER and POSNER, Circuit Judges.

POSNER, Circuit Judge.

This action by a former member of the Chicago Mercantile Exchange, Bernstein, against the Exchange and one of its clearing members, Lind-Waldock, raises intricate questions of federal jurisdiction, involving the timeliness of the appeal, the removability of the action, and the doctrine of pendent-party jurisdiction, as well as substantive issues under the Fifth and Fourteenth Amendments and the Commodity Exchange Act.

Bernstein owned a seat on the International Monetary Market division of the Chicago Mercantile Exchange. In accordance with the rules of the Exchange he transferred the seat to Caan, another member of the Exchange (but one who had no seat) in a transaction that resembled a lease. The lease, as we shall call it without intending to prejudge its legal effect, required Caan to pay rent to Bernstein but allowed Caan to keep all the trading profits from his use of the seat. He had trading losses instead, precipitating the present controversy.

When a nonclearing floor trader, such as Caan, sells a futures contract to a third party, the contract of sale is actually between the floor trader's clearing member, here Lind-Waldock, and the buyer's clearing member. The clearing members insure that the transaction will go through. By way of a hypothetical and oversimplified

example (a more detailed description of commodities trading can be found in *Leist v. Simplot*, 638 F.2d 283, 286–87 (2d Cir. 1980), aff'd *sub nom. Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982)), suppose that Caan on January 11 sells frozen pork bellies at 60 cents a pound for delivery next September, and on January 12 the price of September bellies begins to rise. If when September rolls around the buyer demands delivery at 60 cents, Lind-Waldock, as Caan's clearing member, will have to honor the contract whatever the price of bellies then is. To protect itself, each day the price rises Lind-Waldock will debit Caan's account by the difference between the price at the end of the day and the contract price of 60 cents. Should it be unable thus to shift the entire loss on the contract to Caan, Lind-Waldock will be entitled by the rules of the Exchange to collect any deficit from the transferor of the seat, Bernstein.

Because of his trading losses Caan found himself owing Lind-Waldock—or so Lind-Waldock contended—$385,000. Caan pledged real estate to Lind-Waldock to secure the debt while he tried to raise the money. He failed, and Lind-Waldock attempted to satisfy its debt out of the pledged property. But this effort was only partially successful, so pursuant to the rules of the Exchange Lind-Waldock asked the Exchange to auction off Bernstein's seat and it did so. The auction yielded more than $200,000, all of which went toward paying off Caan's debt to Lind-Waldock. Bernstein got nothing.

Shortly before the auction Bernstein had brought suit in an Illinois state court against the Mercantile Exchange and Lind-Waldock to enjoin the auction. He charged that his position in relation to Caan was that of a guarantor, and that Lind-Waldock by agreeing to the pledge of real estate to secure Caan's debt and by fixing the amount of that debt at $385,000 (which Bernstein contended was an inflated estimate) had materially altered the contract that Bernstein had guaranteed, thus discharging him as guarantor under principles

of suretyship illustrated by *Bank of Commerce v. Riverside Trails*, 52 Ill.App.3d 616, 620, 10 Ill.Dec. 384, 388, 367 N.E.2d 993, 997 (1977). Bernstein named the Exchange as a defendant so that he could be sure of getting complete equitable relief if he prevailed against Lind-Waldock. After a preliminary injunction was denied, the suit became one for restoration of the seat or in the alternative for damages.

The Exchange removed the suit to federal district court, alleging that Bernstein's rights were governed by federal rather than state law. Lind-Waldock also filed a removal petition. Bernstein moved to remand the case to state court, but the motion was denied. He then filed an amended complaint in federal court. His claim against Lind-Waldock was as before, but now he charged that the Mercantile Exchange had taken away his seat without due process of law. The district court granted summary judgment for both defendants on all but a minor count which he remanded to the state court, and Bernstein has appealed.

We must first decide whether the appeal was timely, since if it was not we have no jurisdiction over it. The district court entered judgment on November 29, 1982. On December 7, Bernstein filed a "Motion for Extension of Time to File Notice of Appeal Under Rule 73 and for Other Relief." The motion was a garble. Rule 73 of the Federal Rules of Civil Procedure, relating to the taking of appeals to the courts of appeals, had been repealed in 1968. (After Bernstein filed his motion a new Rule 73 was promulgated, but it relates to federal magistrates and has nothing to do with this case.) The motion requested an extension of time for filing the notice of appeal until 28 days after Bernstein received the transcript of the judge's oral decision granting summary judgment for the defendants. Bernstein was apparently unaware that Rule 4(a)(5) of the Federal Rules of Appellate Procedure authorizes the district judge to give a party no more than 30 extra days to file the notice of appeal beyond the date it is due (which means, in a private case, 60 days in all from the entry of judgment).

Bernstein's motion also asked for leave to postpone filing a motion to reconsider the judge's decision under Rule 60 of the civil rules (Bernstein must have meant Rule 60(b) since 60(a), relating to clerical mistakes, is not relevant to this case) until 30 days after receipt of the transcript. But a Rule 60(b) motion does not toll the time for filing the notice of appeal. See Fed.R. App.P. 4(a)(4). A motion for reconsideration under Rule 59(e) (technically, a motion to alter or amend judgment) does, but it must be filed within 10 days, and the period cannot be extended. See Fed.R.Civ.P. 6(b). Thus, even if Bernstein's motion is construed as one for an extension of time for filing a Rule 59(e) motion, it was improper. *Western Transport. Co. v. E.I. Du Pont de Nemours & Co.*, 682 F.2d 1233, 1236 (7th Cir.1982); *Parisie v. Greer*, 705 F.2d 882, 892 (7th Cir.1983) (separate opinion). And insofar as it sought relief under Rule 60(b) it could not (as we have said) extend the time for filing the notice of appeal.

Had the judge ignored this garbled motion, Bernstein would thus have been out of luck; the 30 days to file an appeal would have run out and his right to appeal would have been forfeited. But on December 9 the judge granted Bernstein's motion for an extension of time—including an extension of time for filing the notice of appeal—and established a briefing schedule for the Rule 60(b) motion. That motion was denied several months later, and within 30 days after denial Bernstein filed his notice of appeal. Since this was after the expiration of the maximum period by which the district judge could have extended the time that Bernstein had to appeal from the original judgment, it might appear that Bernstein was still out of luck. But he is saved by the judge-made rule, especially well established in this circuit, that if before the time for filing the notice of appeal has expired the district judge grants an extension of time for filing the notice beyond the limits set in Rule 4(a)(5), and the appellant relies on the extension, the notice of appeal is timely if filed within the ex-

tended time. See *Textor v. Board of Regents*, 711 F.2d 1387, 1390–91 (7th Cir. 1983), and cases cited there; *Aviation Enterprises, Inc. v. Orr*, 716 F.2d 1403, 1406 n. 25 (D.C.Cir.1983). This case presents the rule in an appealing light. Although Bernstein's counsel should have familiarized himself with the time limits in the Federal Rules, those limits have often tripped up experienced federal practitioners. And Bernstein, after all, did not want to be in federal court—he was dragged there by removing defendants who, as we shall see, removed the case improperly. On December 9, when the judge granted an extension of time that Bernstein's counsel did not realize was *ultra vires*, Bernstein still had plenty of time to file a timely notice of appeal (unlike the situation in *Denley v. Shearson/American Express, Inc.*, 733 F.2d 39 (6th Cir.1984)). We interpret the district judge's order of December 9 as intended to set a new filing deadline of 30 days after the judge acted on the motion for reconsideration under Rule 60(b); and while this deadline was way past the longest extension that the judge was authorized to give Bernstein, under our rule the appeal, which was filed before the new deadline, was timely.

Having satisfied ourselves that we have jurisdiction of this appeal, we now consider whether the district court had jurisdiction of the removed suit. By construing Lind-Waldock's petition as an expression of consent to the Mercantile Exchange's removing the case, and the Exchange's petition as an expression of consent to Lind-Waldock's removing the case, we can avoid deciding one question about the removability of this case: whether either defendant could have removed on its own. Consent is required for removal under 28 U.S.C. § 1441(a), *Northern Illinois Gas Co. v. Airco Industrial Gases*, 676 F.2d 270, 272–73 (7th Cir.1982), but not for removal under 28 U.S.C. § 1441(c), 1A Moore's Federal Practice ¶ 0.168[3.–2–2], at pp. 556–57 (1983)—that is, not if the plaintiff's claim against the removing defendant is "separate and independent" from the other claims in the suit. *American Fire &*

*Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), strongly implies that if the claim against Lind-Waldock was pendent to the claim against the Exchange, or vice versa, this condition could not be satisfied. However, if the claims were unrelated (or less related), presumably either party could remove the case without the other's consent, provided the claim was within the original jurisdiction of the federal courts. For if consent were required in such a case, a plaintiff might be able to prevent removal of a federal claim by joining an unrelated claim against a different defendant, and this would reduce the effectiveness of section 1441(c) in making separate and independent claims a basis for removal. But, as we have said, we can avoid these byways by treating Lind-Waldock's petition to remove as consent to Bernstein's removing, and vice versa.

Another question, however, is whether Bernstein's state court suit could have been brought in federal district court originally; if not, it was not removable. See 28 U.S.C. § 1441(a). Whether it could or could not would depend, of course, on the (truthful) allegations of the complaint rather than on an issue that might be— even one that certainly would be—injected later by the answer or some other subsequent pleading. *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983). The parties named in the complaint were not of diverse citizenship; all were citizens of Illinois. And the complaint did not allege a violation of federal law by either defendant (though this in itself would not defeat removal, if federal law was an essential ingredient of the right asserted in the complaint, *id.* 103 S.Ct. at 2853). As a matter of fact it did not specify any source of law; but it reads like a standard common law breach of contract complaint.

The defendants based removal on the idea that Bernstein must have meant to

allege a violation of the rules of the Chicago Mercantile Exchange. His rights against Lind-Waldock were created and their scope defined by those rules. And his rights against the Mercantile Exchange were derivative from his rights against Lind-Waldock; the purpose of bringing in the Exchange was to prevent it from selling his seat to satisfy his debt to Lind-Waldock, a debt he contended had been discharged.

■ The defendants' interpretation of the complaint is plausible. The fundamental allegation in the complaint is that the relationship between Bernstein and Lind-Waldock after the lease of Bernstein's seat to Caan and Caan's trading losses was that of guarantor (of Caan's debt to Lind-Waldock arising from those losses) and guarantee. That relationship, between two members of the Mercantile Exchange and concerning a third, was created if at all by the rules of the Exchange authorizing the lease to Caan and defining Lind-Waldock's rights in relation to Caan, Bernstein, and the Exchange itself. But this characterization of the complaint does not prove that there is federal jurisdiction. Although the Chicago Mercantile Exchange is closely regulated by the Commodity Futures Trading Commission under the Commodity Exchange Act, as amended, 7 U.S.C. §§ 1 *et seq.*, and rules of the Exchange must be and are approved by the Commission, see 7 U.S.C. § 7a(12), it does not follow that every dispute about their meaning or application "arise[s] under" federal law and is therefore within the original jurisdiction of the federal district courts under 28 U.S.C. § 1331. For example, a dispute over the assignment of a copyright does not arise under the federal copyright law, at least where the dispute does not require an interpretation of that law, *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 828 (2d Cir.1964) (Friendly, J.), even though the copyright is a creation of that law. The reason is not to be found in any compulsion exerted by the words "arising under"; it is practical. A contrary conclusion would bring into the federal courts a host of disputes that do not require the skill and experience of federal judges in interpreting federal law, and the decision of which one way or another would not vitally affect the objectives of any federal law.

It merely restates the question whether the present case arises under federal law to point out that the case certainly arises under the rules of the Mercantile Exchange, so that if those rules are themselves federal laws federal jurisdiction is established. It would greatly extend the meaning of the words "laws ... of the United States" in 28 U.S.C. § 1331 to so describe the rules of the Chicago Mercantile Exchange. Maybe therefore this way of putting the argument for federal jurisdiction should be rejected out of hand. But in any event the question whether the Mercantile Exchange's rules are federal laws, if it is to be taken seriously at all, requires the same analysis as the question whether the case arises directly under the Commodity Exchange Act. The practical effect of holding that the Exchange rules are federal laws is that disputes over their meaning and application will be resolved in accordance with a body of principles developed and applied (mainly) by federal judges, rather than by state judges applying state law.

As in *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union,* 457 U.S. 15, 102 S.Ct. 2202 72 L.Ed.2d 639 (1982), there is no evidence that Congress wanted the federal courts to create a body of federal common law (here a federal common law of suretyship) to govern the class of disputes illustrated by this case, and we can think of no other reason why those courts should undertake the task. State courts, deploying a mature body of contract principles that seem well suited to resolving contractual disputes among members of commodity exchanges, have been adjudicating such disputes for a century, see, e.g., *Olds v. Chicago Open Board of Trade,* 33 Ill.App. 445 (1889); *Rosee v. Board of Trade,* 43 Ill.App.3d 203, 1 Ill.Dec. 730, 356 N.E.2d 1012 (1976), with satisfactory results as far as we can tell. Although federal regulation of commodity exchanges is much more extensive than it

used to be, no reason is suggested why adjudication by state courts of the contract disputes among members of those exchanges should be expected to interfere with the current federal regulatory scheme any more than has happened in the case of the stock exchanges, which have been heavily regulated by the federal government since the 1930s. Rules of stock exchanges must be approved by the Securities and Exchange Commission, see 15 U.S.C. § 78s(b); but *Sacks v. Reynolds Securities, Inc.,* 593 F.2d 1234, 1244–45 (D.C. Cir.1978), held nevertheless that the rules of the New York Stock Exchange governing its internal operations do not create implied rights of action under federal law. Although there is a clear analytic difference between deciding whether to create a private right of action to enforce a federal law and deciding merely whether a complaint alleges a violation of federal law— Congress might have wanted violations of exchange rules to be actionable in federal court but not as private damage actions— the questions can overlap, and did in *Sacks.* The court made the question of allowing a private damage action turn on whether Congress wanted violations of internal rules of federally regulated stock exchanges to be litigated in federal courts under federal law or in state courts under state law, and the answer given by the court (state courts under state law) is equally applicable to this suit. Not only are the federal courts more than busy enough as it is, but they have no special gifts for developing a body of contract law that will govern the internal disputes of the exchanges better than they are governed by state contract law, and we can find nothing in the Commodity Exchange Act to indicate that Congress nevertheless wants us to preempt state law in these cases.

█ Although an implied federal damage remedy for violation of the anti-fraud provision of the Commodity Exchange Act was recognized in *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), the alleged violations in this case are not of a statute (or implementing CFTC regulation, as in *Sam Wong & Son, Inc. v. New York Mercantile Exchange,* 735 F.2d 653, 670 (2d Cir.1984) (Friendly, J.)) but of rules promulgated by an exchange to govern the relations among its members. After the *Merrill Lynch* decision Congress passed the Futures Trading Act of 1982, which in 7 U.S.C. § 25 creates explicit, and exclusive, private damage remedies for certain violations not only of the Act but also of the rules of the commodity exchanges. But this provision cannot be used to support federal jurisdiction of this case. It took effect after Bernstein brought this suit. See 7 U.S.C. § 25(d). And anyway disputes between seat owners and clearing members are not within the scope of the provision as we read it.

█ We conclude that Bernstein's claim against Lind-Waldock was not removable to federal court. Therefore his claim against the Chicago Mercantile Exchange, being as we have said purely derivative from his claim against Lind-Waldock, was not removable either. But after Bernstein's motion to remand was denied, he threw in the towel, as it were, and filed an amended complaint in federal court that included an unmistakable federal cause of action against the Exchange. The amended complaint was thus within the original jurisdiction of the federal district courts and it makes no difference that it was filed only because Bernstein's previous suit had improperly been removed. If he was convinced that the original action was not removable he could have stuck by his guns and we would have vindicated his position on appeal. But once he decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there. Otherwise he would be in a position where if he won his case on the merits in federal court he could claim to have raised the federal question in his amended complaint voluntarily, and if he lost he could claim to have raised it involuntarily and to be entitled to start over in state court. He "cannot be permitted to invoke the jurisdiction of the federal court, and then disclaim it

when he loses." *Brough v. United Steelworkers of America*, 437 F.2d 748, 750 (1st Cir.1971); see also *Illinois ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 939 (7th Cir.1983).

Although Bernstein's due process claim against the Mercantile Exchange was within the district court's jurisdiction, the claim had no merit. The Fourteenth Amendment's due process clause constrains state action only; and the Exchange is not an arm of Illinois or any other state. It is a private association, heavily regulated to be sure, but by the federal government rather than by the state. Bernstein therefore also argues, and with greater force, that regulation by the federal government has made the Exchange an agency of the United States, thus bringing the Exchange under the due process clause of the Fifth Amendment. *Rosee v. Board of Trade*, 311 F.2d 524 (7th Cir.1963), rejected this argument, but at a time when federal regulation of commodities exchanges was very limited. *United States v. Solomon*, 509 F.2d 863, 868–71 (2d Cir.1975) (Friendly, J.), held that the New York Stock Exchange was not an arm of the federal government, but did so in reference to the compulsory self-incrimination clause of the Fifth Amendment rather than the due process clause. The court left open the question whether a different result might be reached under the latter clause, as had been suggested in dicta in earlier decisions. See *id.* at 871.

We think the same result should be reached in the circumstances before us. The argument for treating a securities or commodity exchange as an arm of the federal government is that federal law imposes on the exchange a duty of policing its members that makes the exchange in effect a law-enforcement agent of the government. Cf. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 938–40, 102 S.Ct. 2744, 2755–56, 73 L.Ed.2d 482 (1982). But as Judge Friendly pointed out in the *Solomon* case, the agency analogy is upside down. The exchange is the principal rather than the agent; the purpose of the federal law is to strengthen the power and responsibility of the exchange in performing a policing function that preexisted federal regulation. See 509 F.2d at 869. But in any event a dispute between two members of a commodity exchange over a debt arising from a third member's trading losses is only remotely related to the exchange's enforcement functions. Whether Bernstein must satisfy Caan's debt or whether he was discharged by Caan's pledge of real estate to Lind-Waldock must therefore be a matter of almost complete indifference to the federal government, so that in resolving this dispute against Bernstein by selling his seat the Mercantile Exchange cannot be said to be doing the business of the government and hence was not its agent. Since we cannot think of any other basis for regarding the Mercantile Exchange as an agency of the federal government—the fact that it is heavily regulated by a federal commission will not do, as that would bring under the Fifth Amendment much of the private sector, ranging from hospitals to railroads—we conclude that the action of the Mercantile Exchange was not the action of the federal government for purposes of the due process clause of the Fifth Amendment. We therefore need not decide whether if the Exchange had violated Bernstein's rights under that clause he would have had a damages remedy against the Exchange directly under the Fifth Amendment, as suggested by *Weiss v. Lehman*, 676 F.2d 1320 (9th Cir.1982). Nor need we consider any possible claim under the takings clause of the Fifth Amendment (on which see *Kizas v. Webster*, 707 F.2d 524, 534–40 (D.C.Cir.1983)), as none is made.

This disposes of Bernstein's claim against the Mercantile Exchange; but what of his claim against Lind-Waldock? Since the amended complaint added no federal claim against Lind-Waldock, and the original complaint, as we have been at pains to show, stated no federal claim against Lind-Waldock, the only basis for exercising federal jurisdiction over the claim against Lind-Waldock in the amended complaint was that it was pendent to Bernstein's federal-law claim against the Chicago Mercan-

tile Exchange. But since the district judge properly dismissed that claim before trial, and since the considerations of judicial economy that underlie pendent jurisdiction are but weakly engaged when the federal claim drops out so soon, the judge was required in the absence of extraordinary circumstances not shown here to remand the pendent claim to state court rather than go on and decide it. See *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

All the circumstances of the case were against retaining the pendent claim. It was a pendent-party claim. This term refers to the case where there are two or more factually related claims, with one party (plaintiff or defendant) in common, and one claim is within the statutory jurisdiction of the federal courts and the other is not. An example is *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 366, 41 S.Ct. 338, 342, 65 L.Ed. 673 (1921), which held that in a class action the citizenship of the unnamed class members is irrelevant to determining whether there is the complete diversity of citizenship ordinarily required to bring a case within the federal diversity jurisdiction, and which by so holding allowed nondiverse, nonfederal claims to be joined with factually related claims. But pendent party jurisdiction is an embattled concept these days, see, e.g., *Aldinger v. Howard*, 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276 (1976); *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (and maybe *Ben-Hur* is vulnerable, see Currie, *Pendent Parties*, 45 U.Chi.L.Rev. 753, 762–64 (1978)). For example, we have held recently that a diversity claim for less than the statutory minimum amount in controversy is not within pendent party jurisdiction when the main claim is also a diversity claim. *Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005, 1008–09 (7th Cir.1982). But where the main claim is a federal-question claim, there is still considerable support for allowing pendent party jurisdiction to be exercised over a related state-law claim against a different party. See, e.g., *Ly-*

*kins v. Pointer, Inc.*, 725 F.2d 645 (11th Cir.1984); *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1040–41 (5th Cir.1982). And we recently suggested that pendent-party-defendant jurisdiction survives in the admiralty field, where there is a strong policy of consolidating as many claims as possible in one forum. See *In re Oil Spill by Amoco Cadiz*, 699 F.2d 909, 913–14 (7th Cir.1983).

The recent cases permit the following generalization: if the pendent party concept retains any vitality today (a question expressly left open in *Aldinger* and in *Moor v. County of Alameda*, 411 U.S. 693, 713–15, 93 S.Ct. 1785, 1797–99, 36 L.Ed.2d 596 (1973)), when there is a greater concern with avoiding unnecessary federal inroads into state jurisdiction than when the concept first emerged, it survives as a convenience to a party who has a substantive federal claim (*Lykins, Joiner, Amoco Cadiz*) rather than as a service to the cause of judicial economy (*Hixon*). It makes it cheaper for such a party to proceed in federal court by allowing him to bring in related claims against different parties. This policy has no relevance to the present case. Bernstein, at least at first, did not want to be in federal court at all; removal was not his idea. And though once he found himself stuck in federal court because his petition to remand the case to state court had been denied he decided to add a federal claim to his state claims, there is no indication that he wanted to litigate his claim against Lind-Waldock, against whom he had no federal claim to add, in federal rather than state court.

Furthermore, a valid pendent claim must be based on the same facts as the main claim. For it is only on the theory that the two claims are part of a single case (implying a common factual setting) that pendent jurisdiction, which is not mentioned in Article III of the Constitution or its implementing statutes (except 28 U.S.C. § 1338(b), relating to intellectual property), could be thought to be within the scope of Article III. It is doubtful that this condition is satisfied here. Cf. *Manway Con-*

*struction Co. v. Housing Authority*, 711 F.2d 501, 504 (2d Cir.1983). Bernstein's due process claim against the Mercantile Exchange, the only federal claim in the case, arises from the Exchange's having auctioned off his seat without, he claims, giving him an adequate hearing. But his claim against Lind-Waldock arises from Lind-Waldock's previous action in making a deal with Caan that included fixing Caan's debt to Lind-Waldock in an amount that Bernstein claims is excessive. The two claims are of course related, but they are related sequentially, and it is not clear that they ought to be considered part of one case if pendent jurisdiction is to be construed conservatively in recognition of the inroads it makes into the autonomy of state law, and of its somewhat insecure (because purely implicit) constitutional foundations. See *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1057–58 (7th Cir.1983) (dissenting opinion); cf. *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 962 (7th Cir. 1982).

■ Since the district court should not have retained jurisdiction to decide the merits of Bernstein's action against Lind-Waldock, this part of the district court's judgment must be vacated with directions to dismiss that action without prejudice to Bernstein's refiling it in state court. (Ill. Rev.Stat. ch. 110, ¶ 13–217 will protect Bernstein against a statute of limitations defense based on the period when his claim against Lind-Waldock was pending in the federal courts.) But the district court's judgment dismissing the action against the Mercantile Exchange on the merits is affirmed. No costs will be awarded in this court.

AFFIRMED IN PART,

VACATED IN PART WITH DIRECTIONS.