**Travis S. HAMMOND, Plaintiff,**

v.

**Randall KUNARD, Bruce Harmening and Lawrence Wait, Officers and Agents of the United States Marshal Service, Internal Revenue Service and Adjunct Officers of the Drug Enforcement Administration in Their Official Capacities, and Tom Clayton, Bill Clayton, and Jim Clayton, Surviving Heirs of Velma A. Clayton, Deceased, Defendants.**

No. 94–1331.

United States District Court,
C.D. Illinois.

Dec. 22, 1994.

John H. Bisbee, Macomb, IL, for plaintiff.

James A. Lewis, Asst. U.S. Atty., and Terrence J. Corrigan, Asst. Atty. Gen., Springfield, IL, for Randall Kunard, Bruce Harmening and Lawrence Wait.

Jim D. Lucie, Macomb, IL, for Tom, Bill and Jim Clayton.

### ORDER

MIHM, Chief Judge.

This matter comes before the Court on Mr. Hammond's Complaint [1], filed August 11, 1994, the Notice of Removal [3], filed on August 16, 1994, the First Amended Complaint [5], filed August 19, 1994, and the Amended Notice of Removal [12], filed September 19, 1994. The Defendants, Tom Clayton, Bill Clayton, and Jim Clayton, (hereinafter "the Claytons") filed a Motion to Dismiss [6] pursuant to Fed.R.Civ.P. 12(b)(1)

& (6) and 28 U.S.C. § 1331, and an Objection to the Notice of Removal [13]. For the reasons set forth herein, the Claytons' Motion to Dismiss is GRANTED and the foreclosure action is REMANDED to Illinois Circuit Court, Schuyler County.

### HISTORY

On January 30, 1986, Travis Hammond and Dwight Bookout signed an Installment Agreement to purchase a 329-acre farm located in Schuyler County, Illinois. (First Amend.Complaint, Exhibit C at 1). At some point, Mr. Hammond became the sole owner of the property by purchasing Mr. Bookout's undivided interest in the farm. (First Amend.Complaint, Exhibit C at 3).

On December 18, 1991, Mr. Hammond was indicted by a federal grand jury and charged with conspiracy to deliver marijuana in violation of 21 U.S.C. § 841(a)(1). Mr. Hammond's Notice of Removal indicates that the indictment was amended on March 17, 1993, to include counts of illegal manufacture of marijuana and money laundering. (Notice of Removal at 1–2). Subsequently, the United States *allegedly* seized the property, although the Claytons contend Mr. Hammond has been in possession of the property at all times since the purchase in 1986. (Obj. to Notice of Removal at 2). Nevertheless, the Government instituted a forfeiture action against Mr. Hammond's farm in Case No. 92–3305, *United States v. Real Property,* filed in the Central District of Illinois, Springfield Division, on November 17, 1992. (Notice of Removal at 2). Plaintiff alleges the Government's forfeiture action was a purposeful and knowing violation of his constitutional rights and, therefore, not supported by probable cause to believe the real estate was used or intended to be used as an instrumentality in violation of federal narcotics laws. (First Amend.Complaint at 11–13).

The Claytons filed a foreclosure action in the Illinois Circuit Court, Schuyler County, No. 93–CH–3, on May 17, 1993, as Mr. Hammond was in default and arrears totaling $21,036.45 as of May 1, 1993. (First Amend.Complaint, Exhibit C at 3).[1] The

---

1. The Claytons submit that the current amount in default is $39,589.84, with an annual installment

Claytons' foreclosure action was removed to federal court on or about June 17, 1993 and became civil action No. 93–3149. This action and the federal forfeiture action, No. 92–3305, were stayed pending resolution of the criminal charges against Mr. Hammond.

After the trial on the three-count indictment, a jury acquitted Mr. Hammond of the counts of illegal manufacture and money laundering. (First Amend.Complaint at 13). The court declared a mistrial as to the conspiracy to deliver marijuana count. *Id.* On July 12, 1994, the District Court, Springfield Division, dismissed the federal forfeiture action, No. 92–3305, pursuant to the Government's motion. *Id.* The Schuyler County foreclosure action was remanded to state court, effective August 12, 1994. A mere four days later, on August 16, 1994, Mr. Hammond filed a Notice of Removal of this same action, No. 93–CH–3, in this Court.

### PRESENT ACTION

In Mr. Hammond's Notice of Removal and First Amended Complaint, he alleges, in short, that he was prevented from making payments under the real estate installment agreement because of the unconstitutional actions of Government agents Harmening, Kunard, and Wait. Plaintiff asserts that the indictment and subsequent prosecution were false and malicious, and he argues that the seizure of the farm and the filing of the forfeiture suit occurred under objectively unreasonable and fraudulent circumstances.

In Count I of his First Amended Complaint, Mr. Hammond asserts that "as a direct and proximate result of defendants subjecting plaintiff to a deprivation of his rights, privileges and immunities secured by the 4th, 5th and 6th Amendments to the United States Constitution ..." he was (1) forced to defend himself against false and malicious charges to the tune of $150,000; (2) deprived of liberty, as the conditions of his bond required that he report to the United States Probation Office on a monthly basis and submit urine samples; (3) deprived of property, namely the farm in Schuyler County, without notice or a pre-termination hearing; and (4) injured to the extent that "public disgrace

and scandal among his neighbors ..." has irreparably damaged his reputation in the community. Plaintiff argues that under the logic of *Bivens v. Six Unknown Fed. Narcotic Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), Defendants Harmening, Kunard, and Wait are liable to him for general and special damages, according to proof, and punitive damages in the amount of $2,000,000.

Count II of the First Amended Complaint alleges that the Claytons are necessary parties to the *Bivens* action against Defendants Harmening, Kunard and Wait, as any liability owed to the Claytons by Mr. Hammond should be borne by the federal agents. Specifically, Plaintiff argues that as a result of having to raise money to defend ' himself against the "false and malicious criminal charges," he was left unable to make the payments under the installment contract. (First Amend.Complaint at 18). Additionally, he asserts that it would have been "objectively unreasonable" for him to continue to pay on the agreement as the federal agents had "disseized" him of his ownership interest. *Id.* Mr. Hammond prays that, if he is found liable in default to the Claytons, the Court order Defendants Harmening, Kunard, and Wait to fully indemnify any obligations to the Claytons.

The crux of this· matter is whether this Court can properly exercise jurisdiction over the parties. It is clear that if this Court lacks jurisdiction over the Claytons, their Motion to Dismiss must be granted and the case remanded to state court. If, on the other hand, the state foreclosure action is within the Supplemental Jurisdiction of federal court, the Motion to Dismiss must be denied, and the case will continue in this Court.

### DISCUSSION

In his Notice of Removal, Count II of First Amended Complaint, Amended Notice of Removal, and Memorandum in Response to the Claytons' Motion to Dismiss, Mr. Hammond asserts a variety of grounds to support this Court's jurisdiction over the Claytons' fore-

due March 1, 1995, of $18,794.92. (Mem. in Support of Mot. to Dismiss at 2–3).

closure action, including 28 U.S.C. § 1441(a) and (b), 28 U.S.C. § 1331, as interpreted by *Bivens*, 28 U.S.C. § 1367, and F.R.Civ.P. 19.

The Claytons argue, on the other hand, that they are not necessary parties, as Count II names them "for the sole purpose of their indemnification" by Defendants Harmening, Kunard, and Wait. (Motion to Dismiss at 1). The Claytons assert that if Mr. Hammond is found liable to them for the defaulted real estate contract, he could be compensated by damages assessed against the federal agent defendants, presumptively in the event the Government agents are found liable in a separate *Bivens* action. The Claytons argue that removing this action to federal court places their ability to collect on the debt in jeopardy. They also submit that a bifurcation of the proceedings will allow them to collect on the debt owed in a more timely manner. Finally, the Claytons submit that the subject matter of their state foreclosure action is outside the jurisdiction of this Court as no legal claims between the Claytons and the federal agents exist to give rise to a right of indemnification against the government agents.

■ In determining whether the Claytons' state action can be brought before this Court, it is necessary to closely scrutinize any exercise of jurisdiction. As the Seventh Circuit held in *Krueger v. Cartwright*, the federal courts "... are obliged to police the constitutional and statutory limits on their subject-matter jurisdiction." 996 F.2d 928, 930 (7th Cir.1993) (citing *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986)). There is no doubt that the federal courts are courts of limited jurisdiction possessing only that power granted by the Constitution or authorized by Congress. *Kokkonen v. Guardian Life Ins. Co. of America*, — U.S. —, —, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992)). The long-standing presumption against jurisdiction was first enunciated by the Supreme Court in *Turner v. President of Bank of North America*, 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799). *Accord Grace v. American Central Ins. Co. of St. Louis*, 109 U.S. 278, 283, 3 S.Ct. 207, 210, 27

L.Ed. 932 (1883); *Adden v. Middlebrooks*, 688 F.2d 1147, 1150 (7th Cir.1982) ("there is never a presumption in favor of federal jurisdiction, but rather the basis for such jurisdiction must be affirmatively evidenced by the party invoking it") (citations omitted). The burden of establishing jurisdiction lies with the party asserting federal jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 182–183, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936); *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). In this action, Mr. Hammond bears the full burden of establishing that this Court can properly exercise subject-matter jurisdiction.

■ Mr. Hammond's action against the federal agent defendants arises under the Constitution, as the *Bivens* Court found a cause of action for money damages may accrue against federal agents who are found to have violated a plaintiff's constitutional rights. *Bivens*, 403 U.S. at 395, 91 S.Ct. at 2004. As Justice Brennan noted, "[w]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Id.* at 392, 91 S.Ct. at 2002 (citing *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)). Further, damages have generally been found to be the appropriate remedy for an invasion of "personal interests in liberty." *Id.* at 395, 91 S.Ct. at 2004 (citing *Nixon v. Condon*, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932); *Nixon v. Herndon*, 273 U.S. 536, 540, 47 S.Ct. 446, 446, 71 L.Ed. 759 (1927); *Swafford v. Templeton*, 185 U.S. 487, 22 S.Ct. 783, 46 L.Ed. 1005 (1902)). Therefore, this Court concludes that to the extent that Mr. Hammond brings suit against the federal agents for a violation of his 4th, 5th and 6th Amendment rights, under *Bivens*, original jurisdiction is properly vested in the district courts. *See Caldwell v. Miller*, 790 F.2d 589, 595 (7th Cir.1986).

On the other hand, Mr. Hammond's removal of the Claytons' state foreclosure action is not so straightforward. The first step in this analysis must be driven by the Feder-

al Removal Statute, 28 U.S.C. § 1441. The statute provides, in relevant part,

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) Whenever a separate and independent claim or cause of action, which would be removable is sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

28 U.S.C. § 1441 (sub-sections (d) and (e) · omitted).

 Section 1441 allows those cases in which the district courts would have original jurisdiction, either by federal question or diversity of citizenship, to be removed by the defendant(s). *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 345, 108 S.Ct. 614, 616, 98 L.Ed.2d 720 (1988). As the Seventh Circuit has held, "federal courts are straightaway restricted from removing actions where the action could not have been originally filed in federal court." *Frances J. v. Wright,* 19 F.3d 337, 340 (7th Cir.1994). The Seventh Circuit has further admonished that the removal statute should be read narrowly and the courts should presume the plaintiff may choose his or her forum. *Doe v. Allied–Signal, Inc.,* 985 F.2d at 911 (citing

to *Illinois v. Kerr–McGee Chemical Corp.,* 677 F.2d 571, 576 (7th Cir.1982), *cert. denied,* 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982)).

As diversity is not alleged here, "the propriety of the removal turns on whether the case falls within the original 'federal question' jurisdiction of the federal courts." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986); *Seinfeld v. Austen,* 39 F.3d 761, 762–63 (7th Cir.1994); *Burda v. M. Ecker Co.,* 954 F.2d 434, 437 (7th Cir.1992).

 In order to determine whether the state foreclosure action falls within the 'federal question' original jurisdiction of this Court, we must look to the complaint to justify removal under § 1441(a). *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (as removal jurisdiction exists only if original jurisdiction existed, the 'well-pleaded complaint' rule applies to removal cases); *Bernstein v. Lind–Waldock & Co.,* 738 F.2d 179, 183 (7th Cir.1984) (original jurisdiction is found from the allegations of the complaint "rather than on an issue that might be—even one that certainly would be—injected later by the answer or some other pleading"). The 'well-pleaded complaint' rule instructs that a federal question, arising under the Constitution and laws of the United States, must appear on the face of plaintiff's properly pleaded complaint, unaided by the petition for removal or answer. *Gully v. First Nat. Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936) (citing *State of Tennessee v. Union & Planters' Bank,* 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894); *Louisville & N.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411–12, 57 L.Ed. 716 (1913); *Taylor v. Anderson,* 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)); *Oglesby v. RCA Corp.,* 752 F.2d 272, 275 (7th Cir.1985). Even the plaintiff's anticipation of a defense that may be based on the Constitution or laws of the United States is not

sufficient. *Gully,* 299 U.S. at 113, 57 S.Ct. at 97–98 (citing *Devine v. City of Los Angeles,* 202 U.S. 313, 334, 26 S.Ct. 652, 657–58, 50 L.Ed. 1046 (1906)). Further, a defendant cannot remove a state law claim to federal court even if his defense is based entirely on federal law. *Caterpillar v. Williams,* 482 U.S. 386, 398, 107 S.Ct. 2425, 2432–33, 96 L.Ed.2d 318 (1987); *Allied–Signal, Inc.,* 985 F.2d at 911 ("a case may not be heard in district court when the only federal question posed is raised by a defense argument ... even if both parties concede the federal question is the only real issue in the case"); *Hickey v. Duffy,* 827 F.2d 234, 239 (7th Cir. 1987) (citing *Johnson v. Mississippi,* 421 U.S. 213, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975)).

▪ The Court must turn to the Claytons' complaint, filed in the state court foreclosure action, to determine whether a federal question was presented which would invoke this Court's jurisdiction. *See Franchise Tax Bd.,* 463 U.S. at 10, 103 S.Ct. at 2846–47 (citing to *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914)). The complaint is devoid of a scintilla of evidence that a federal question would be at issue. Under this Court's reading of the complaint, there is no basis for removal of the Claytons' foreclosure action.

To determine under what basis Mr. Hammond finds removal appropriate the Court examined the Notice of Removal, which states, in part,

> "[t]his court has jurisdiction of this cause under pursuant to [sic] 28 U.S.C. § 1331 as interpreted by *Bivens v. Six Unknown [Fed.] Narcotics Agents,* 406 [403] U.S. 388 [91 S.Ct. 1999, 29 L.Ed.2d 619] (1971), [sic] in that Hammond seeks indemnification from agents Harmening, Wait and Kunard for any liability he may have to the plaintiffs in the removed case ..."

(Notice of Removal at 3). This conclusory statement alone does not provide the Court with subject-matter jurisdiction over the state foreclosure action merely because our original jurisdiction over the *Bivens* action arises under the Constitution and laws of the United States. Nothing in the *Bivens* decision indicates that peripheral parties, like the Claytons, are subject to our jurisdiction.

In Plaintiff Hammond's Amended Notice of Removal, he argues removal is proper,

> in order that this Court may adjudge that any liability for foreclosure Hammond may have is the proximate result of wrongful acts of agents Harmening, Wait and Kunard *which deprived plaintiff of rights, privileges and immunities secured by the Constitution of the United States and who should, therefore, indemnify Hammond to the full extent this court finds he is subject to foreclosure.*

(Amended Notice of Removal at 3) (emphasis in original). Mr. Hammond intends 28 U.S.C. § 1441(a) & (b) to provide the jurisdictional basis for his removal. (Amend. Notice of Removal at 3). The Court finds that Mr. Hammond's charge of jurisdiction hangs precariously on his allegation that the federal agents caused his default, which appears, at best, to be a possible affirmative defense to his default. There is no question that this is insufficient to provide a basis for removal. The Supreme Court's decision in *Gully v. First National Bank, supra,* clearly provides that the state court complaint must provide the jurisdictional basis for removal without reference to the answer or notice of removal. *See also, Oglesby,* 752 F.2d at 275. The Court holds that it would not have had original jurisdiction over the state foreclosure action and, therefore, may not remove the case to federal court.

Mr. Hammond has alleged several other grounds for this Court's jurisdiction, so the Court will turn to his Amended Notice of Removal, First Amended Complaint, and Memorandum in Response to the Motion to Dismiss to determine whether some other basis for jurisdiction exists. Mr. Hammond's Memorandum in Response to Motion to Dismiss and Objection to Removal submits the following arguments: (1) Fed.R.Civ.P. 19(a), viewed in conjunction with Plaintiff's theory that the agents tortiously induced his breach of contract, requires joinder; and (2) this Court's supplemental jurisdiction under 28 U.S.C. § 1367 read in conjunction with Fed. R.Civ.P. 19(a) and the claim of tortious interference with contract mandates the joinder of

the Claytons. The Court will consider each of these arguments in turn.

First, although Plaintiff has not filed a motion to join the Claytons, the Court will construe the Memorandum as such. Mr. Hammond's contention that the Claytons should be joined under Fed.R.Civ.P. 19(a) turns on the statute itself. Fed.R.Civ.P. 19(a) provides,

> a person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest....

Fed.R.Civ.P. 19(a).[2]

Mr. Hammond argues that because Count II of his First Amended Complaint sets out a cause of action, under Illinois law, for tortious interference with a contract, the Claytons must be joined under the federal rules because they have an interest in the federal litigation. As the Court will discuss below, Mr. Hammond has not stated a claim for interference with a contractual relationship. Thus, as Mr. Hammond admits, his failure to state a legal theory which implicates the Claytons' interests defeats his first argument. (Mem. In Resp. to Mot. to Dismiss at 10).

■■■■■ The application of Rule 19 to necessary parties turns on the specific facts of the case. *Tillman v. City of Milwaukee*, 715 F.2d 354, 357 (7th Cir.1983); *Le Beau v. Libbey–Owens–Ford Co.*, 484 F.2d 798, 800 (7th Cir.1973). Under the requirements of Rule 19(a), the absent party will be joined if

complete relief cannot be accorded in his or her absence, or interests of the absent party will be prejudiced, or the persons already present will be subject to a substantial risk of incurring inconsistent obligations. *Id.* Rule 19, however, is not a source of federal jurisdiction; subject matter jurisdiction over the cause of action must exist before joinder will be permitted. *S.E.C. v. Cherif*, 933 F.2d 403, 414 (7th Cir.1991) (citing *Graf v. Elgin, Joliet and Eastern Ry. Co.*, 697 F.2d 771, 775 (7th Cir.1983)).

■■■■ In this matter, joinder of the Claytons is not appropriate as complete relief can be accorded in the absence of the Claytons. The phrase 'complete relief' refers to relief between the parties already present, not between one of the parties and the person(s) sought to be joined. *Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir.1992) (citations omitted). In the event Mr. Hammond succeeds on his *Bivens* action, his damages award, theoretically, will reflect any loss of property allegedly caused by the agents and will not result in partial or hollow relief between the parties already present.

■■■■ Rule 19 provides that if the absent person has an interest in the subject matter of the litigation and his or her absence may prejudice either himself or those already before the court, that person(s) shall be joined, if feasible. 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1604 at 49. The Claytons do not claim an interest in the subject matter of Mr. Hammond's *Bivens* action, thus they are not indispensable parties for the purposes of Rule 19. The Claytons do not argue that their ability to protect their interest in the farm will be hampered. Quite the opposite, they assert that the likelihood of collecting on the contract will be placed in jeopardy if they are joined as parties.

Additionally, none of the current parties are likely to incur inconsistent obligations as a result of the Claytons' absence. The

---

2. The term "necessary" has been stricken from the Federal Rules to "emphasize that the real purpose of this rule is to bring before the court all persons whose joinder would be desirable for just adjudication." 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1604 at 36–37.

agents are either liable or not liable to Mr. Hammond as a consequence of their actions. Their accountability, or lack thereof, will not result in any inconsistency of obligation to themselves or Mr. Hammond. Mr. Hammond will either receive damages or will not. Thus, the Court finds that Rule 19 joinder of the Claytons is neither necessary nor appropriate.

Second, Hammond argues that the Court may exercise supplemental jurisdiction, as defined by 28 U.S.C. § 1367, over the state foreclosure action by the application of 28 U.S.C. § 1367 and Fed.R.Civ.P. 19(a). (Mem. in Resp. to Mot. to Dismiss at 6 & 17). Mr. Hammond's argument in favor of supplemental jurisdiction can be summarized as follows: the Court should exercise supplemental jurisdiction over the Claytons because (1) the last sentence of § 1367(a) extends supplemental jurisdiction to parties who are subject to joinder under Rule 19(a), and (2) there is a pendent claim against the federal agents for tortiously interfering with his contractual relationship with the Claytons.

Having previously held that the Claytons are not subject to Rule 19 joinder defeats Mr. Hammond's first argument. The Court turns to Mr. Hammond's second argument to determine if either a pendent claim or a pendent party analysis would allow this Court to exercise supplemental jurisdiction.

■■■ The Seventh Circuit has held that under 28 U.S.C. § 1367, Section 310(a) of the Judicial Improvements Act of 1990, 104 Stat. 5089, Pub.L. 101–650, the court must first satisfy itself that the primary claim falls within its original jurisdiction. *Myers v. County of Lake, Ind.*, 30 F.3d 847, 850 (7th Cir.1994). This Court is satisfied that Mr. Hammond's *Bivens* action is within this Court's original jurisdiction. Thus, the Court may consider the appropriateness of exercising supplemental jurisdiction over the Claytons' state law claim under § 1367(a).

Section 1367 provides, in relevant part, (a) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that **are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy** under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367 (emphasis added). Sub-section (b) contains limitations on diversity jurisdiction which do not concern this matter. Sub-section (c) provides the circumstances in which the district courts may decline to exercise supplemental jurisdiction, including for example, if the claim is a novel issue of state law or the court has dismissed all claims over which it had original jurisdiction.

■■■ Section 1367 is a codification of the doctrines of ancillary and pendent jurisdiction and was not intended to expand those judge-made doctrines. *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1251 (7th Cir.1994); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). The statute does not define Article III's constitutional limitation of 'case or controversy.' McLaughlin, Denis F., The Federal Supplemental Jurisdiction Statute— A Constitutional and Statutory Analysis, 24 Ariz.St.L.J. 849, Fall 1992. The statute's legislative history indicates only that § 1367(a) is intended as a codification of the Supreme Court's decision in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), regarding the scope of pendent jurisdiction. McLaughlin, *supra*, at 895. The *Gibbs* Court, however, defined this constitutional standard in terms of pendent claim jurisdiction. 383 U.S. at 724–25, 86 S.Ct. at 1138. The Supreme Court has yet to define the constitutional limits of pendent party jurisdiction. McLaughlin, *supra*, at 895. In *Finley v. U.S.*, 490 U.S. 545, 549, 109 S.Ct. 2003, 2006–07, 104 L.Ed.2d 593 (1989), the Court presumed, without deciding the issue, that the standard for pendent party jurisdiction is analogous to that of pendent claim jurisdiction. The Seventh Circuit seems to agree, as the test for pendent party jurisdiction in *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 546 (7th Cir.1986), echoes the *Gibbs* test for pendent claim jurisdiction. *See also*

*Huffman v. Hains,* 865 F.2d 920, 922 (7th Cir.1989) (citing *Moor v. Alameda County,* 411 U.S. 693, 712, 715–16, 93 S.Ct. 1785, 1797, 1798–99, 36 L.Ed.2d 596 (1973)). Therefore, this Court will apply the *Gibbs* "common nucleus of operative fact" test to determine whether either pendent claim or pendent party jurisdiction exists. *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138.

■ Mr. Hammond argues in his Memorandum in Response to the *Motion to Dismiss* that he has a pendent claim against the agents for tortious interference with his contractual relationship with the Claytons. (Mem. in Resp. to Mot. to Dismiss at 19). A pendent claim arises when a plaintiff asserting a federal question claim against a defendant seeks to join a related state law claim against the same defendant, even though the state law claim is jurisdictionally insufficient. Assuming, *arguendo,* that Mr. Hammond's intentional interference with a contractual relationship claim arises from the same · nucleus of common facts such that a plaintiff would be expected to try the issues together, this Court would have supplemental jurisdiction over the state law claim. *Id.* at 725, 86 S.Ct. at 1139.

Mr. Hammond states in his Memorandum in Response to Motion to Dismiss that his First Amended Complaint effectively states a claim for intentional interference with a contractual relationship, citing *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 137 Ill.Dec. 19, 23, 545 N.E.2d 672, 676 (1989).[3] Mr. Hammond argues that this state law action qualifies as a claim pendent to the *Bivens* suit and thus requires this Court to exercise supplemental jurisdiction. Mr. Hammond misstates the law of Illinois. The *HPI Health Care* decision articulated the requirements for an action for intentional interference with a contractual relationship as follows,

(1) the existence of a valid and enforceable contract between plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intention-

al and unjustified inducement of a breach of the contract; (4) **a subsequent breach by the other,** caused by the defendant's wrongful conduct; and (5) damages.

*HPI Health Care,* 137 Ill.Dec. at 23, 545 N.E.2d at 676 (citations omitted) (emphasis added).

■ Mr. Hammond's Memorandum states, "(iv) a subsequent breach by **either the plaintiff or the other** caused by the defendant's wrongful conduct." (Mem. In Response to Mot. to Dismiss at 11) (emphasis added). This Court has reviewed Illinois case law and has not found a single instance in which a plaintiff has successfully brought a tortious interference with a contractual relationship suit against a third party for the plaintiff's own breach. *Girsberger v. Kresz,* 261 Ill.App.3d 398, 198 Ill.Dec. 940, 633 N.E.2d 781 (Ill.App.1993) (a subsequent breach by the other); *Leahy Realty Corp. v. American Snack Foods Corp.,* 253 Ill.App.3d 233, 192 Ill.Dec. 801, 625 N.E.2d 956 (Ill.App. 1993) (same); *Regan v. Garfield Ridge Trust and Sav. Bank,* 220 Ill.App.3d 1078, 1087, 163 Ill.Dec. 605, 612, 581 N.E.2d 759, 766 (Ill. App.1991) (same); *Chapman v. Crown Glass,* 197 Ill.App.3d 995, 1004, 145 Ill.Dec. 486, 492, 557 N.E.2d 256, 262 (Ill.App.1990) (same); *Belden Corp. v. InterNorth Inc.,* 90 Ill. App.3d 547, 551, 45 Ill.Dec. 765, 413 N.E.2d 98 (Ill.App.1980) (citing to *Zamouski v. Gerrard,* 1 Ill.App.3d 890, 897, 275 N.E.2d 429, 433 (Ill.App.1971), *declined to follow on other grounds, Roy v. Coyne,* 259 Ill.App.3d 269, 196 Ill.Dec. 859, 630 N.E.2d 1024 (1994)); *Herman v. Prudence Mut. Cas. Co.,* 92 Ill. App.2d 222, 229, 235 N.E.2d 346 (Ill.App. 1968) *modified* 41 Ill.2d 468, 244 N.E.2d 809 (Ill.1969) (citing *Northern Ins. Co. of N.Y. v. Doctor,* 23 Ill.App.2d 225, 161 N.E.2d 867 (Ill.App.1959)). Therefore, the Court finds Mr. Hammond's assertion that a pendent claim exists that would justify this Court's exercise of supplemental jurisdiction over the Claytons' state law action an incorrect interpretation of the law.

---

3. The Court notes that the Memorandum is the first time Mr. Hammond has asserted that he has a state law claim which directly involves the Claytons as parties. Previously he argued that

the Court's supplemental jurisdiction simply arose from the subject matter of the Claytons' foreclosure action, the farm.

■ Turning next to the possibility that pendent party jurisdiction may allow this Court to exercise supplemental jurisdiction over the Claytons' state law action, § 1367(a) expressly provides for the jurisdiction over pendent parties, those parties over which there is no independent basis of federal jurisdiction. *Brazinski*, 6 F.3d at 1181. Cases involving "pendent party defendants" are those, like the case at bar, in which the plaintiff asserts a federal law claim against one defendant and seeks to associate a related but jurisdictionally insufficient state law claim against an additional defendant.[4] The supplemental jurisdiction statute extends the federal courts' jurisdiction over pendent parties to the full extent of Article III. 28 U.S.C. § 1367(a). Thus, the hurdle which Mr. Hammond must clear is demonstrating that his state law claim against the Claytons is so related to the *Bivens* action as to form part of the same case or controversy. *Id.* He must accomplish this by demonstrating that the state law claim and the *Bivens* action is "derived from a common nucleus of operative fact." *Zabkowicz*, 789 F.2d at 546 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)).

■ The Claytons argue in their Motion to Dismiss that Mr. Hammond has not stated a legally cognizable claim against them. This Court agrees. Count II of the First Amended Complaint provides no legal theory upon which Mr. Hammond could recover from the Claytons. A brief review of those cases which have found a common nucleus of operative fact, such that supplemental (pendent-party) jurisdiction could be exercised, is necessary in order to compare the case at bar.

In *Brazinski*, eight female employees of Amoco Petroleum Additives Company, and one non-employee, brought an action in state court against the company for a violation of their tort right to privacy, alleging the company had impermissibly video-taped them in the locker room. *Brazinski*, 6 F.3d 1176,

1181. The company removed the case to federal court. *Id.* at 1178. The Seventh Circuit held that the eight employees actually brought their suit under § 301 of the Taft-Hartley Act, 29 U.S.C. § 185, because the resolution of the matter required an interpretation of the collective bargaining agreement. *Id.* at 1179. Thus, the case had been properly removed to federal court. *Id.* The *Brazinski* Court found the non-employee plaintiff's claim to be sufficiently related to the federal claim to support the exercise of supplemental (pendent-party) jurisdiction. *Id.* at 1182.

The ninth, non-employee plaintiff in *Brazinski* had alleged specific acts by the defendants which she argued tortiously interfered with her right to privacy. Notably absent from the pleadings in the case at bar is reference to either damages or injury for which the Claytons may be held liable. Under this rationale, Mr. Hammond's pendent party claim must fail.

In *Bernstein v. Lind–Waldock & Co.*, 738 F.2d 179, 181 (1984), the plaintiff owned a seat on the Chicago Mercantile Exchange ("the Exchange") which he effectively leased to Caan, another member of the Exchange. Lind–Waldock, Caan's clearing member, had the obligation to honor whatever contracts Caan made. *Id.* Caan suffered losses and incurred a debt to Lind–Waldock. *Id.* In an attempt to satisfy Caan's debt, Lind–Waldock requested the Exchange auction off Bernstein's seat. *Id.* Plaintiff sued the Exchange and Lind–Waldock in state court to enjoin the auction. *Id.* After the preliminary injunction was denied, the Exchange removed the suit to federal court. *Id.* at 182. Bernstein's motion to remand was denied, and he amended his complaint to include a due process claim against the Exchange. *Id.*

Thus in *Bernstein*, the federal due process claim against the Exchange was coupled with a pendent-party claim against Lind–Waldock based on principles of suretyship arising under Illinois law. *Id.* at 181–82. Again, the facts of *Bernstein* are distinguishable from

---

4. It has been noted that the supplemental jurisdiction statute overrules the Supreme Court's decisions holding that a plaintiff asserting a federal claim against one defendant could not seek to join a related but jurisdictionally insufficient state law claim against an additional defendant. McLaughlin, *supra*, at 878.

the case at bar as Mr. Hammond has alleged no state law theory which implicates the Claytons to support this Court's exercise of supplemental jurisdiction.

In *Benson v. Cady,* 761 F.2d 335 (7th Cir.1984), a prison inmate was injured when a barbell fell on his neck. He brought suit against various defendants associated with the Wisconsin Division of Corrections for violations of his Eighth Amendment rights and Equal Protection guarantees. Specifically, plaintiff alleged that Israel, the warden of the Waupun Correctional Institution, refused to allow him to receive scheduled medical treatment. Plaintiff also alleged several pendent state law claims, including (1) Israel and two other defendants had negligently failed to "implement and supervise the inspection and repair" of the barbell which was the proximate cause of his injury, (2) Defendant Whitmore, Director of the Bureau of Institutional Health Services, had failed to implement and supervise an efficient medical request system, and (3) Israel's refusal to let him visit the local hospital for his therapy sessions. The court of appeals upheld the district court's refusal to exercise pendent party jurisdiction over any defendant, other than the warden.

The striking difference between *Benson* and the case at bar is that the plaintiff in *Benson* set forth specific allegations of wrongdoing on behalf of the parties he sought to bring before the court under supplemental jurisdiction. Mr. Hammond has failed to state any legal or equitable basis upon which he could recover from the Claytons.

In *Lykins v. Pointer, Inc.,* 725 F.2d 645 (11th Cir.1984), a plaintiff who suffered injuries and whose wife died after an airplane crash brought suit against the United States, the Federal Aviation Administration (the FAA), and various private parties, including the manufacturer of the aircraft. *Lykins,* 725 F.2d at 646. The Eleventh Circuit found that the district court had original jurisdiction over the government, its agency and employees pursuant to 28 U.S.C. § 1346(b). *Id.* at 646–47. The court further held that the lower court had the power to assert pendent party jurisdiction over the private

parties. *Id.* at 649. The court noted specifically that the plaintiff's complaint sought recovery against each defendant for their respective roles in causing the crash. *Id.*

In the case at bar, Mr. Hammond argues that his *Bivens* action requires the exercise of supplemental jurisdiction over the Claytons' foreclosure action. This Court disagrees. Mr. Hammond does not seek recovery from the Claytons for their role in the loss of his farm. The Court can find no viable legal theory upon which Mr. Hammond seeks recovery from the Claytons.

The Court finds that the Claytons' foreclosure action is not a part of the same case or controversy as Mr. Hammond's *Bivens* action. Therefore, according to the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), the Court has no power to exercise supplemental jurisdiction over the Claytons' state foreclosure action.

### CONCLUSION

For the reasons stated herein, this Court DENIES Plaintiff Hammond's Notice of Removal [3] and Amended Notice of Removal [12] of state foreclosure action, 93–CH–3, and GRANTS the Claytons' Motion to Dismiss [6] and REMANDS this case to the Circuit Court of Schuyler County, Illinois.